IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

    **Plaintiff**,

        **v.**

$20,000 IN U.S. CURRENCY,

    **Defendants.**

**Civil No.** 20-1259 (FAB)

OPINION AND ORDER

BESOSA, District Judge.

    Claimant Andy Morales—Vélez ("Morales—Vélez") moves to dismiss the United States' verified complaint for forfeiture *in rem* pursuant to Rule G(8)(b) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules") and Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(4), 12(b)(5), and 12(b)(6).  (Docket No. 23.)  For the reasons set forth below, the motion to dismiss is **DENIED**.

**I.   Background**

    The Court construes the following facts from the complaint and pleadings[1] "in the light most favorable to the plaintiff[]"

---

[1] "[w]hen . . . a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)."  Beddall v. State St. Bank & Tr. Co., 137 F.3d 12, 17 (1st Cir. 1998).

and "resolve[s] any ambiguities" in the plaintiff's favor.  See
Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 17 (1st Cir. 2011)
(discussing the Rule 12(b)(6) standard of review); see Viqueira v.
First Bank, 140 F.3d 12, 16 (1st Cir. 1998) (discussing the
Rule 12(b)(1) standard of review).

The United States seeks to forfeit $20,000 seized from
Morales—Vélez on September 18, 2019 by the Drug Enforcement
Administration ("DEA") in Arecibo, Puerto Rico. (Docket No. 1 at
p. 1.)  The United States asserts that the money is forfeitable
pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C)
(which allows the forfeiture of property related to the sale of
controlled substances), and 18 U.S.C. § 981(a)(1)(A) (which allows
the forfeiture of property related to money laundering).  Id. at
p. 2.

**_Allegations in the Unsworn Declaration_**

The United States filed its civil forfeiture complaint on
June 3, 2020, id., accompanied by an _ex parte_ unsworn declaration
by a DEA task force officer.  (Docket No. 3.)  According to the
declaration, at some time prior to August 2018, a source tipped
the DEA that Morales—Vélez was part of a drug trafficking
organization based in a public housing project, and that Morales—
Vélez was using private mail services to send cocaine to the United
States and receive cash in return.  (Docket No. 3 at p. 2.)  On

August 2, 2018, DEA agents seized a FedEx box sent by Morales—
Vélez from an address in Pennsylvania to an address in Arecibo,
Puerto Rico.  Id. at pp. 2—3.  The box contained U.S. currency
amounting to almost $90,000, concealed inside toy boxes, wrapped
in a material known to be used to avoid detection of currency.
Id. at p. 3.

About a year later, on September 18, 2019, a public housing
project inspector, accompanied by agents of the Puerto Rico Police
Department, was conducting routine interventions into possible
housing violations at the Manuel Zeno Gandía Public Housing
Project.  Id.  The inspector knocked on the door at apartment #266
in building C—12 and received no answer.  Id.  The inspector and
police officers heard children crying inside, and police officers
stationed outside the building reported seeing smoke coming out of
the apartment.  Id.  The officers forcibly entered the apartment
on suspicion that the children inside were in danger.  Id.  Inside,
the officers found Morales—Vélez holding a black bag which turned
out to contain two and a half bricks of what they recognized as
kilograms of cocaine.  Id. at p. 4.  The officers arrested Morales—
Vélez.  Id.  Officers inspecting the apartment also found burn
marks on one wall, likely the source of the smoke seen from
outside.  Id.  They found a partially burned and destroyed
cellphone in a trash can and noticed burn marks on Morales—Vélez's

hands.  Id.  The officers also found drug paraphernalia and empty
mail parcels.  Id.

After being advised of his constitutional rights, Morales—
Vélez disclosed to the officers that he had a pistol converted to
fire automatically, and consented to a search of his two vehicles.
Id. at p. 4—5.  Inside the glove compartment of one vehicle, the
officers found the pistol, a 16-round magazine with 9mm munitions,
three pistol magazines, about 125 9mm rounds of ammunition, and a
large amount of US currency.  Id. at p. 5.  The currency amounted
to $20,000 and was all in 100-dollar bills.  Id.  Morales—Vélez
stated to the officers that the gun was given to him by the owner
of the drugs to protect himself and the goods.  Id.  The unsworn
declaration states that there is no record of Morales—Vélez having
filed Puerto Rico income taxes.  Id.

On October 2, 2019, Morales—Vélez was charged with violating
18 U.S.C. § 922(g)(1) (felon in possession of a firearm), 18 U.S.C.
§ 924(a)(1)(A) (possession of a machine gun in furtherance of a
drug trafficking crime), 18 U.S.C. § 924(a)(1)(A)(i) (possession
of a firearm in furtherance of a drug trafficking crime), and 21
U.S.C. § 841(a)(1) and (b)(1)(B)(ii) (possession with intent to
distribute controlled substances).  (Criminal Case No. 19-620

(FAB), Docket No. 14.)[2]   The indictment alleged that, upon conviction of an offense in violation of 21 U.S.C. § 841, Morales—Vélez would forfeit any property constituting, or derived from, any proceeds of distribution of controlled substances.   Id. at p. 3—4.

### *The Administrative Claim*

On January 7, 2020, Morales—Vélez's attorney filed, through the Department of Justice's website, an electronic "Petition for Remission/Mitigation Form" for the return of the $20,000. (Docket No. 15—2.)   His attorney indicated on the form that Morales—Vélez was the owner of the $20,000 seized by the DEA on September 18, 2019 in Arecibo, Puerto Rico.   Id. at p. 3.   In "Section III — Interest in Property," his attorney wrote that her "[c]lient has lottery tickets that amount to the money seized. Case is still pending at the District Court and client has a constitutional right to be presumed innocent."   Id. at p. 4.   The form next asks the applicant to "please explain the reason for filing a petition." Id.   His attorney wrote "Client has a propriety interest and criminal case is still pending."   Id.   The last question of this section asked the applicant to "please list any documents you are including in support of your interest in the asset(s).   If none

---

[2] All further references to Criminal Case No. 19-620 will be as "Criminal Docket No. x."   All references to the Civil Case No. 20—1259 will be simply "Docket No. x."

are included, please explain why." Id.   It appears that here Morales—Vélez's attorney attached a .pdf document entitled "Lottery Tickets Receipts — Talonarios."[3] Id.

Section V of the form, "Declaration and Representation" states that this section may be completed by an attorney as long as the petitioner completes the 'Sworn Notice of Representation.' Id. at p. 5.  Moralez—Vélez's attorney electronically signed on his behalf that "I attest and declare under penalty of perjury that my petition is not frivolous and the information provided in support of my petition is true and correct to the best of my knowledge and belief." Id.  In the Sworn Notice of Representation, it states "I have retained the above—named attorney who has authority to represent me in this matter.  I have fully reviewed the foregoing petition and found that its contents are truthful and accurate in every respect. I declare under penalty of perjury that the foregoing information is true and correct."  The signature line states "Petition is electronically signed by the attorney for

---

[3] The text following this question of the form displays simply the words "* Lottery Tickets Receipts — Talonarios.pdf" which the Court assumes shows that this question allowed the applicant to attach their documents directly to that part of the form and that a .pdf of the lottery ticket receipts was attached there.

the petitioner," and then lists Morales—Vélez's name on the next line.[4]  Id.

### The Civil Forfeiture Case

On March 5, 2020, Morales—Vélez pled guilty to possession of a firearm in furtherance of a drug trafficking crime, and agreed to forfeit the pistol, magazines, and ammunition, as well as any property derived "as a result of his drug trafficking activities." (Criminal Docket No. 33 at pp. 1, 6.)  The words "including but not limited to $20,000" had previously been written at the end of this sentence, but were crossed out and initialed by the parties. Id. at p. 6.

On April 23, 2020, the DEA sent a letter to Morales—Vélez's attorney stating that it had "received the submission regarding the [$20,000.00].  The following information is provided:

> The previously filed petition has been referred to the judicial district noted above [District of Puerto Rico]. Please direct all inquiries regarding this matter to that office."

(Docket No. 15—3.)

On June 3, 2020, the United States filed the current complaint to forfeit the $20,000 civilly, (Docket No. 1), as well as a motion

---

[4] At the bottom of this page, there appear to have been two documents attached to the petition, "Sworn Notice — FPD—20200107_143654.pdf" and "Signed Petition — FPD—20200107_143654.pdf." (Docket No. 15—2 at p. 5.) These documents have not been submitted to the Court, if they are in fact separate documents.

for the issuance of a warrant of arrest *in rem* and seizure. (Docket No. 4.)  The complaint was accompanied by the unsworn declaration, filed *ex parte*, in which the United States moved to restrict or seal to protect an ongoing criminal investigation. (Docket No. 2.) The United States simultaneously requested a stay of the proceedings, (Docket No. 5), which was neither granted nor denied by the Court.

Unaware of the civil forfeiture complaint, Morales—Vélez filed a 41(g) motion for return of his property in the criminal docket on July 9, 2020.  (Criminal Docket No. 37.)  On July 23, 2020, the United States responded, opposing the motion based on the existence of the civil case. (Docket No. 39.)  In its response, the United States noted that it had filed a civil judicial forfeiture action against the currency "[i]n response to defendant's request that his administrative claim against the $20,000.00 in U.S. currency be referred for judicial forfeiture . . . ." Id. at p. 3—4.  The Court denied Morales—Vélez's motion, due to the adequate remedy at law of the civil proceeding, and cited to the civil case docket.  (Criminal Docket No. 40.)

On November 17, 2020, the United States moved to set aside its request for a stay in the civil docket, noting that a plea agreement was reached on March 5, 2020, and that sentencing would be held on February 12, 2021, and thus there was no further need

for the complaint to be stayed.  (Docket No. 9.)  The Court granted

the motion the same day and issued a warrant *in rem*.  (Docket

No. 12.)

About three months later, on March 13, 2021, the government

served process on Morales—Vélez at the Metropolitan Detention

Center in Guaynabo, Puerto Rico.  (Docket No. 27—1 at p. 1.)  The

mail was returned as refused, however, with a hand—written note

stating, "In transit inmate." Id. at p 3.  On March 13, 2021, the

government also served process on Morales—Vélez's attorney who had

submitted the "Petition for Remission" and who was also his

criminal defense attorney.  Id. at p. 6.  The certified mail slip

indicates that it was received on March 17, 2021.  Id. at p. 7.

At some unknown date, the government served process on Morales—

Vélez at the Tallahatchie Correctional Facility in Mississippi.

(Docket No. 27—1 at p. 4.)  No signed certified mail slip confirms

its delivery, but it contains a tracking number which could

presumably do so.  Id. at p. 5.

On March 16, 2021, Morales—Vélez was sentenced in the criminal

case, and appeared virtually from the Tallahatchie Correctional

Facility.  (Criminal Docket No. 65.)  On April 6, 2021, the United

States filed a notice of publication in the civil docket that

notice had been published for 30 consecutive days on

www.forfeiture.gov, from March 2, 2021 to March 31, 2021.  (Docket

No. 14.)  The notice stated that any owner of the property had until 60 days from March 2, 2021 to file a verified claim with the Court. (Docket No. 14—1 at p. 1.)

Morales—Vélez filed a claim on April 29, 2021, stating that he was the true and lawful owner of the property and was entitled to its possession. (Docket No. 15.) Morales—Vélez stated that the money was the proceeds of an electronic lottery and attached a copy of the receipts for the lottery winnings. Id. at p. 1; Docket No. 15-1. On June 7, 2021, Morales—Vélez moved the Court to unseal the unsworn declaration or grant him access. (Docket No. 20.) Without yet having been granted access to the declaration, Morales—Vélez filed the current motion to dismiss on June 8, 2021. (Docket No. 23.) Morales—Vélez argued that the complaint's scant factual assertions deprived the Court of subject matter jurisdiction, deprived him of due process, and that the United States had fatally failed to meet multiple procedural requirements, and that the complaint should be dismissed. Id. The Court allowed Morales—Vélez to have access to the unsworn declaration on June 22, 2021. (Docket No. 26.)

The United States opposed Morales—Vélez's motion to dismiss on June 22, 2021. (Docket No. 27.) Morales—Vélez replied on July 14, 2021. (Docket No. 30.)

## II.  The Civil Asset Forfeiture Reform Act of 2000

Civil forfeiture is an *in rem* proceeding against real or personal property, litigated as "though [the object] were conscious instead of inanimate and insentient." Various Items of Personal Property v. United States, 282 U.S. 577, 581 (1931). Modern forfeiture is a deterrent, "rendering illegal behavior unprofitable." Calero—Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 687 (1974).  The United States Code contains more than one hundred civil forfeiture statutes.  William Carpenter, Reforming the Civil Drug Forfeiture Statutes:  Analysis and Recommendations, 67 TEMP. L. REV. 1087, 1109 (1994).

Congress enacted the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA") to "provide a more just and uniform procedure" for federal civil forfeitures.  Pub. L. No. 106—185, 114 Stat 202 (codified as amended at 18. U.S.C. § 983).  "CAFRA is a comprehensive scheme that supplemented the patchwork system of laws that previously governed forfeitures, providing more due process to individuals affected by property seizures." In re Eight Thousand, Five Hundred Eight Dollars and Sixty-Three Cents ($8,508.63) from PNC Bank Account xxxxx, 2018 WL 3427635, at *2 (E.D. Pa. July 16, 2018) (citing Stefan D. Cassella, *The Civil Asset Forfeiture Reform Act of 2000: Expanded Government*

*Forfeiture Authority and Strict Deadlines Imposed on All Parties*,
27 J. LEGIS. 97, 122-25 (2001)).

The Supplemental Rules for Certain Admiralty or Maritime
Claims and Asset Forfeiture Actions ("Supplemental Rules") govern
civil asset forfeiture proceedings arising from a federal statute.
Supp. R. G(1) ("This rule governs a forfeiture action *in rem*
arising from a federal statute. To the extent that this rule does
not address an issue, Supplemental Rules C and E and the Federal
Rules of Civil Procedure also apply."); 18 U.S.C. § 983(a)(3)(A).

## III. Standing

As a preliminary matter, Morales—Vélez must demonstrate that
he has standing to intervene in this action. Supp. R. G(8)(b)(i).
Standing is both constitutional and statutory. See Luitgaren v.
Sun Life Assurance Co. of Canada, 765 F.3d 59, 62 (1st Cir. 2014).
"[A]n allegation of ownership, coupled with some evidence of
ownership, is sufficient to establish constitutional standing to
contest a forfeiture." United States v. United States Currency,
189 F.3d 28, 35 (1st Cir. 1999) (citation omitted). Statutory
standing is satisfied by simply complying "with the procedures and
deadlines for filing a claim set out in Supplemental Rule G."
United States v. Ltr. from Alexander Hamilton to Marquis de
Lafayette Dated July 21, 1780, 15 F.4th 515, 521 (1st Cir. 2021)
(citing United States v. One-Sixth Share of James J. Bulger in All

Present & Future Proceeds of Mass Millions Lottery Ticket No. M246233, 326 F.3d 36, 40 (1st Cir. 2003)).

Morales—Vélez filed a claim, pursuant to Supplemental Rule G(5), within the timelines prescribed by the Supplemental Rules. (Docket No. 15.)  This claim asserted that Morales—Vélez was the owner of the $20,000, and attached evidence of the proceeds of winning lottery tickets.  Id.  Accordingly, Morales—Vélez has established constitutional and statutory standing.  See United States Currency, 189 F.3d at 35; Hamilton, 15 F.4th at 521.

## IV.  Pleading Sufficiency

Morales—Vélez argues in his motion to dismiss, written without the benefit of the disclosure of the unsworn declaration, that the facts alleged in the complaint are too bare—bones to (1) give the Court subject matter jurisdiction, or to (2) meet the pleading standard laid out in the Supplemental Rules or demanded by due process.[5]  (Docket No. 23 at pp. 7—14.)  In his reply, after having gained access to the unsworn declaration, Morales—Vélez still argues that it does not cure the complaint's pleading defects.  (Docket No. 30 at pp. 1—6.)

---

[5] Morales—Vélez also argues that the complaint does not meet the probable cause standard that traditionally governed civil forfeiture complaints. (Docket No. 23 at p. 10—11.)  Because Morales—Velez concedes that this argument is foreclosed by United States v. López—Burgos, 435 F.3d 1, 2 (1st Cir. 2006), and notes that he is raising the defense only to preserve it for appeal, the Court declines to analyze this argument.

The United States argues that the unsworn declaration is appropriately integrated into the complaint, and that the factual allegations in it are more than enough to establish subject matter jurisdiction and comply with the Supplemental Rules' pleading standard. (Docket No. 27.)

## A.   Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction. Destek Grp., Inc. v. State of N.H. Pub. Utils. Comm'n, 318 F.3d 32, 38 (1st Cir. 2003). Pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)"), a party may move to dismiss an action for lack of subject-matter jurisdiction. See Id. In considering a Rule 12(b)(1) motion, the Court "must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor." Merlonghi v. United States, 620 F.3d 50, 54 (1st Cir. 2010) (citation omitted). The party asserting jurisdiction shoulders the burden of showing the existence of federal jurisdiction. Viqueira, 140 F.3d at 12, 16 (1st Cir. 1998) (citations omitted).

Morales—Vélez argues that the United States has failed to carry its burden in pleading sufficient facts to establish subject matter jurisdiction, because the allegations in the complaint and the unsworn declaration are conclusory and do not demonstrate a basis for forfeitability pursuant to 21 U.S.C.

§ 881(a)(6) (property related to sale of controlled substances). (Docket No. 23 at pp. 7—10; Docket No. 30 at pp. 4—5.)

The government responds that 28 U.S.C. § 1355(b)(1)(A) provides subject matter jurisdiction in the district court for forfeiture actions in which any of the acts or omissions giving rise to the forfeiture occurred, and that the unsworn declaration provides the facts detailing what acts or omissions are alleged as the basis for the forfeiture.  (Docket No. 27 at p. 2.)

As a preliminary matter, the complaint states the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1345, for actions commenced by the United States, pursuant to 28 U.S.C. § 1355, which allows actions for forfeiture, and pursuant to federal statutes 21 U.S.C. § 881(a)(6), § 841(a)(1) and 18 U.S.C. § 981(a)(1)(A), § 981(a)(1)(C), and § 1956(a)(1)(B)(i).  (Docket No. 1 at pp. 1—2.)  28 U.S.C. § 1355 provides that

(a)  The district courts shall have original jurisdiction, exclusive of the courts of the States, of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise, incurred under any Act of Congress, except matters within the jurisdiction of the Court of International Trade under section 1582 of this title.

(b)(1) A forfeiture action or proceeding may be brought in—

(A) the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred. . . .

28 U.S.C. § 1355.

Morales—Vélez argues that the facts alleged do not give rise to a forfeiture, thus stripping the court of subject matter jurisdiction.[6] (Docket No. 30 at pp. 4—5.) That district courts have subject matter jurisdiction over civil forfeitures in the district where the acts leading to the forfeiture took place, however, is obvious from the face of the statute. See United States v. One 1986 Chevrolet Van, 927 F.2d 39, 44 (1st Cir. 1991) ("The district court clearly had subject matter jurisdiction pursuant to 28 U.S.C. § 1355" because § 1355(a) gives original jurisdiction to the district courts for any forfeiture pursuant to an Act of Congress); United States v. $169,000 Funds Seized From Sentaida Intern., Inc., Bank of Am. Account No. XXXXXXXX8993, 2011 WL 5877012, at *1—2 (D.P.R. Nov. 8, 2011) (Carreño Coll, M.J.) (explaining that "[f]ederal courts have nationwide subject matter jurisdiction over all forfeiture actions arising from statute" pursuant to section 1355(a) and that allegations in the unsworn affidavit that transactions leading to money laundering occurred in Puerto Rico were "certainly sufficient under section 1355(b)").

---

[6] While Morales—Velez acknowledges that 28 U.S.C. § 1345 provides district courts original jurisdiction for all civil actions, suits, or proceedings commenced by the United States, he does not explain how the Court would thus lack subject matter jurisdiction in the event the Court were persuaded that there was no basis for forfeiture jurisdiction pursuant to 28 U.S.C. § 1355.

Civil No. 20-1259 (FAB)                                              17

The complaint states the forfeiture is pursuant to federal law,
Docket No. 1 at p. 1, and the unsworn declaration outlines the
acts alleged to give rise to the forfeiture, namely the discovery
of cocaine bricks and a firearm, suggestive of drug trafficking,
and a location within this district where they occurred. (Docket
No. 3 at pp. 3—5.)  While the United States carries the burden of
showing at trial that the property is ultimately forfeitable, in
determining whether subject matter jurisdiction exists, the Court
"must credit the plaintiff's well-pled factual allegations and
draw all reasonable inferences in the plaintiff's favor."
Merlonghi, 620 F.3d at 54.  The Court clearly has subject matter
jurisdiction and leaves the consideration of whether sufficient
facts have been pled to Morales—Vélez's next argument.  Cf. One
1986 Chevrolet Van, 927 F.2d at 44 (rejecting out of hand
claimant's argument that there was no subject matter jurisdiction
pursuant to 28 U.S.C. § 1355 when the claimant's true argument was
whether another court had already established jurisdiction over
the res, thus ousting the federal court).

    **B.   Heightened Pleading Standard and Due Process**

       **1.   Legal Standard**

        The Supplemental Rules govern civil asset
forfeiture proceedings arising from a federal statute.  Supp. R.
G(1); 18 U.S.C. § 983(a)(3)(A).  Pursuant to Supplemental Rule

G(2)(f), a forfeiture complaint must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Supp. R. G(2)(f).[7] At trial, the United States' burden is "to establish, by a preponderance of the evidence, that the property is subject to forfeiture" and

> if the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense.

18 U.S.C. § 983(c)(1) and (3).  The "complaint 'must provide reasonably detailed facts' that, if accepted as true, support a reasonable belief 'that the United States, after the completion of the discovery process,' could demonstrate by a preponderance of the evidence that the property is tainted and subject to

---

[7] Congress promulgated Supplemental Rule G(2)(f) in 2006, modifying the standard set forth in Supplemental Rule E(2)(a).  12 Charles Allen Wright, Federal Practice and Procedure §3261—62 (3d ed. 2002). Supplemental Rule E(2)(a) states that:

> the complaint shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading.

Supp. R. E(2)(a).  Supplemental Rule G(2)(f) "evolved" from Supplemental Rule E(2)(a), "[carrying] forfeiture case law forward without change." Supp. R. G, Advisory Committee's note on 2006 amendments.  Accordingly, precedent predating the 2006 amendment remains relevant to the Court's analysis.  See, e.g., United States v. $465,789 Seized from Term Life Ins. Policy No. PJ 108002588, 150 F. Supp. 3d 175, 177 (D. Conn. 2015) (citing Supplemental Rules E(2)(a) and G(2)(f)).

forfeiture." United States v. Real Property Known as 223 Spring
Water Lake, 2021 WL 144245, at *2 (E.D. Ky. Jan. 15, 2021) (citing
United States v. 12 Parcels of Real Prop. Located in Carlisle,
Nicholas Cty., Kentucky, 2017 WL 4369485, at *2 (E.D. Ky. Oct. 2,
2017)); see also United States v. Mondragón, 313 F.3d 862, 866-67
(4th Cir. 2002) (finding complaint's allegations sufficiently
particular to show a connection between the seized currency and
drug trafficking where the allegations described a large amount of
currency found in unusual packaging, that the currency was in a
hidden compartment in a vehicle, and that a drug—sniffing dog
alerted to the area of the car near the hidden compartment).

    While the pleading standards under Supplemental
Rule G(2)(f) and Federal Rule of Civil Procedure 8 are not
identical, a court can "logically reference" the caselaw from the
latter and "incorporate instructive principles from those cases
when assessing a civil forfeiture pleading." 223 Spring Water
Lake, 2021 WL 144245, at *3. The Court shall thus "view the facts
of the complaint in the light most favorable to the [United
States], and . . . resolve any ambiguities in [its] favor," Ocasio-
Hernández, 640 F.3d at 17, but "'[t]hreadbare' elemental recital,
'supported by mere conclusory statements,' would [not] carry the
Governments' pleading burden." 223 Spring Water Lake, 2021 WL
144245, at *3 (citing Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009)).

The allegations in the complaint need not stand alone, however, when a supporting affidavit details the factual allegations underlying the complaint.  See United States v. 4492 S. Livonia Rd., 889 F.2d 1258, 1266 (2d Cir. 1989) (the affidavit, which had "the dates, circumstances, location and parties to the alleged drug transactions as well as the drugs and drug paraphernalia seized from the premises, cured any defect in the complaint").  As long as the affidavit, even if first filed under seal, is made available to the claimant during the pendency of the matter, the complaint is not defective.  See United States v. $448,163.10 in U.S. Currency, 2007 WL 4178508, at *5 (D. Conn. Nov. 20, 2007) ("Facts set forth in an affidavit accompanying a forfeiture complaint may serve to cure a lack of specificity in the complaint even when the affidavit was originally filed under seal.").  Pursuant to 28 U.S.C. § 1746, an unsworn declaration has "like force and effect" to an affidavit if the writer declares in writing under penalty of perjury that it is true and correct.  28 U.S.C. § 1746.

## 2.  Analysis

The United States' complaint incorporated an unsworn declaration by a DEA Task Force Officer, made under penalty of perjury.  (Docket No. 1 at pp. 2—3; Docket No. 3 at p. 1.)  That declaration alleged that Morales—Vélez was holding a black bag

that contained two and half bricks of what the officers from their experience understood to be kilograms of cocaine; that there was evidence of the attempted destruction of a cell phone; that there were empty mail parcels in the apartment; that Morales—Vélez had previously been suspected of conducting a drug sale operation using FedEx, and had had a package seized previously which contained large amounts of cash packed in a way such that it would not be detected.  (Docket No. 3 at pp. 2—4.)  The declaration alleged that Morales—Vélez stated to officers, after being informed of his constitutional rights, that he had a pistol converted to fire automatically and that it was given to him by the drug owner to protect himself and "los Cosos," which the Task Force Officer states refers to the kilograms of cocaine.  Id. at pp. 4—5. Additionally, a pistol, ammunition, and $20,000 in hundred-dollar bills were found in the glove compartment of one of Moralez—Vélez's cars.  Id. at p. 5.  The declaration alleged that Morales—Vélez had never filed taxes in Puerto Rico.  Id.

Morales—Vélez argues that these facts do not describe any connection between the $20,000 and a violation of 21 U.S.C. 881(a)(6).  (Docket No. 30 at p. 1—5.)  The denominations of the money are not suggestive of street level dealing, and the cash is not unexplained, since he won the lottery for a similar sized prize.  Id. at p. 3.

The government argues that the allegations in the unsworn declaration including the firearms, magazines, and ammunition, that Morales—Vélez had two vehicles without ever having filed a tax return, and his statements on the day the property was seized, as well as the presence of controlled substances and drug paraphernalia on that date, meets the pleading standard of G(2)(f).  (Docket No. 27 at p. 3—4.)

21 U.S.C. § 881 provides that:

(a)  The following shall be subject to forfeiture to the United States and no property right shall exist in them:

(6)  All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

21 U.S.C. § 881.  To plead a forfeiture properly, the allegations in the complaint and unsworn declaration must "state sufficiently detailed facts to support a reasonable belief that the government will be able to" "establish that there was a substantial connection between the property and the offense." Supplemental Rule G(2)(f); 18 U.S.C. § 983(c)(3).  The Court finds that the United States' allegations meet this requirement.

The unsworn statement alleges facts that, in combination, create a reasonable inference that the government will be able to establish at trial that there was a substantial connection between the property and the sale of controlled substances. See Mondragón, 313 F.3d at 866-67. The unsworn declaration alleges that there were large amounts of cocaine in the apartment, that there were empty mail parcels, that a prior parcel addressed as coming from Morales—Vélez had almost $90,000 inside and was concealed in a way known to be used by drug traffickers, and that Morales—Vélez had a pistol altered to fire automatically that he stated was given to him by the drug owner for protection. (Docket No. 3 at pp. 2—5.) While the money is not in denominations that suggest it was the proceeds of street level sales, that is not the only involvement with controlled substances that makes money forfeitable pursuant to section 881(a)(6). See 21 U.S.C. § 881(a)(6) ("and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter"); see also United States v. One Dodge Durango 2004, 545 F. Supp. 2d 197, 203 (D.P.R. 2006) ("[T]he United States need not link the currency to a specific drug transaction, only to drug activity generally.") (Besosa, J.). The large amount of money, that it is all in 100-dollar bills, that it is in the glove box of a car, next to a

pistol, combined with the facts listed above, create a reasonable belief that the government will eventually be able to show that there was a substantial connection between the money and drug trafficking.  See e.g., United States v. $22,173.00 in U.S. Currency, 716 F. Supp. 2d 245, 251—52 (S.D.N.Y. 2010) (finding that of a large amount of currency kept in a safe deposit box rather than in an interest—bearing account, combined with factual allegations that suggest a pattern of drug trafficking, was sufficient at the pleading stage for the government to create a reasonable belief that it would be able to meet its burden at trial that the money was the proceeds of drug trafficking).

While Morales—Vélez argues that the money is not unexplained because it is approximately the same amount he won in the lottery, this alternate explanation for the source of the money is irrelevant when the government's burden at this stage is merely to plead facts that form a reasonable belief that it will show a substantial connection at trial.  See Supp. R. G(2)(f); 18 U.S.C. § 983(c).  Morales—Vélez will be free to present his evidence to show the money was not connected to the sale of controlled substances, but at this stage the government does not need to disprove his theory of the case; it merely must plead enough facts that show they will prove more at trial.  See $22,173.00 in U.S. Currency, 716 F. Supp. 2d at 251—52.

## V.    *In Rem* Jurisdiction

Morales—Vélez points out that there is no proof of service in the docket showing that the currency was arrested.  (Docket No. 23 at p. 16—17.)  Without proof of arrest, the Court does not have jurisdiction over the *res*.  Id. at p. 15.  Morales—Vélez argues that even if the warrant were executed, it was likely done so in an untimely manner and dismissal would still be warranted.  Id. at p. 18.

The United States did not respond to this issue in its response.  (Docket No. 27.)

The Court ordered the government to file proof of its service on the defendant *res*, (Docket No. 35), with which the government complied. (Docket No. 36.)  The process receipt and return showed that the arrest warrant was executed on February 10, 2022 on the asset forfeiture section of the United States Marshals Service. Id.

### A.    Legal Standard

Rule 12(b)(2) allows a defendant to move to dismiss for lack of personal jurisdiction.  Fed. R. Civ. P. 12(b)(2).  In an *in rem* proceeding, "[j]urisdiction . . . depends on whether the court has power over the defendant *res* to enforce a judgment against it. Service of process is the mechanism by which the court acquires this power." United States v. 2,164 Watches, More or Less

Bearing a Registered Trademark of Guess?, Inc., 366 F.3d 767, 771
(9th Cir. 2004).  Therefore, "[i]n order to initiate an *in rem*
proceeding, 'a valid seizure [or arrest] of the res is
[necessary].'" Bobola v. F/V Expectation, 204 F. Supp. 3d 382, 395
(D. Mass. 2016) (quoting Republic Nat'l Bank of Miami v. United
States, 506 U.S. 80, 84 (1992)).  Rule G of the Supplemental Rules
governs the procedures for an *in rem* forfeiture.  Supp. R. G(1).
Where Supplemental Rule G does not address an issue, however,
Supplemental Rules C and E and the Federal Rules of Civil Procedure
apply.  Id.

        "Where the *res* is not real property, Rule G states, 'the
clerk must issue a warrant to arrest the property if it is in the
government's possession, custody, or control.'" U.S. v. In re
Seizure of One Blue Nissan Skyline Auto., and One Red Nissan
Skyline, 683 F. Supp. 2d 1087, 1089 (C.D. Cal. 2010) (quoting Supp.
R. G(3)(b)(i)).  Rule G does not state how exactly the warrant is
to be executed on intangible property, but Supplemental Rule E(4)
states that "the marshall . . . shall execute the process by
leaving with the the garnishee or other obligor a copy of the
complaint and process . . . ." Supp. R. E(4)(c).  "A process
return and receipt form, or other proof of service indicating when
the warrant was served upon the property, is filed with the court
by the person serving process." United States v. Approximately

Two Thousand, Five Hundred Thirty-Eight Point Eighty-Five Shares (2,538.85) of Stock Certificates of Ponce Leones Baseball Club, Inc., 988 F.2d 1281, 1284 (1st Cir. 1993) (citing Supp. R. E(4)(a) and Fed. R. Civ. P. 4(g)).

### B.   Untimely Execution of Arrest of the *Res*

The deadline for execution of process on the defendant *res* when it is in the custody of the government is not clear from the face of Rule G.  See United States v. $8,440,190.00 in U.S. Currency, 719 F.3d 49, 55 n.9 (1st Cir. 2013) ("Rule G specifically provides that the 'as soon as practicable' requirement does not apply when 'the property is in the government's possession, custody, or control' . . . ."). Rule G(1) states however, that "[t]o the extent that this rule does not address an issue, Supplemental Rules C and E and the Federal Rules of Civil Procedure also apply." Supp. R. G(1). Supplemental Rule E(4)(a) provides that "[u]pon issuance and delivery of the process . . . the marshal or other person or organization having a warrant shall **forthwith** execute the process . . . making due and prompt return." Supp. R. E(4)(a) (emphasis added). Forthwith "means immediately, without delay, or as soon as the object may be accomplished by reasonable exertion." City of New York v. McAllister Brothers, Inc., 278 F.2d 708, 710 (2d Cir. 1960); see also Dickerman v. N. Tr. Co., 176 U.S. 181, 193 (1900) ("But 'forthwith' . . . [i]n matters of

practice and pleading it is usually construed, and sometimes defined by rule of court, as within twenty-four hours."); <u>Henderson v. United States</u>, 517 U.S. 654, 680 (1996) (Thomas, J., dissenting) (a "148-day delay can hardly be described as process served forthwith under even the most generous definition of the term.").

The Supplemental Rules do not detail the consequences of failing to execute process forthwith.  <u>See</u> <u>United States v. 2,164 Watches, More or Less Bearing a Registered Trademark of Guess?, Inc.</u>, 366 F.3d 767, 772 (9th Cir. 2004).  Where the Supplemental Rules do not address an issue, however, the Federal Rules of Civil Procedure are applicable.  <u>See</u> Supp. R. G(1).  Federal Rule 4(m) states the "if a defendant is not served within 90 days after complaint is filed, the court . . . must dismiss the action without prejudice . . . or order that service be made within a specified time." Fed. R. Civ. P. 4(m).  "Amendments in 1993 accorded courts discretion 'to enlarge the [time] period even if there is no good cause shown.'" <u>2,164 Watches</u>, 366 F.3d at 772 (quoting <u>Henderson</u>, 517 U.S. at 663).

In exercising a court's discretion to dismiss without prejudice or extend the timeline for service, a court should "consider whether the claimant had suffered any prejudice" and "might also include consideration of what prejudice the plaintiff,

here the government, would suffer if the case were dismissed."

2,164 Watches, 366 F.3d at 773.

      **C.   Analysis**

      Because the government has now complied with execution of process, the Court has *in rem* jurisdiction.  See 2,164 Watches. 366 F.3d at 771.  Because that process was not executed forthwith, however, the Court must consider whether the claimant suffered any prejudice, and whether the government will be barred by the statute of limitations if the Court dismisses the complaint without prejudice.  Id. at 773.  The claimant here, Morales—Vélez, has been on notice of the proceedings since July 23, 2020, when the government opposed his motion for return of property in the criminal docket. (Criminal Docket No. 39.)  There is no allegation that he has suffered prejudice specifically because of the delayed arrest of the property, but only that he has been prejudiced by not having access to his money. (Docket No. 23 at p. 22.)  The United States will not be prejudiced by a dismissal without prejudice in this case because, as described in Part VII infra, the statute of limitations has not yet started to run.  See 2,164 Watches, 366 F.3d at 773 ("It is conceivable, however, that prejudice might result from a dismissal without prejudice if, for example, the statute of limitations had expired.")

In this instance, because there is no prejudice alleged by Morales—Vélez apart from suffering the absence of his money, the Court views a resolution on the merits as a better use of time and resources than requiring the government to re—file the complaint and serve process timely.  Id.  The government is cautioned, however, that untimely execution of process will not always result in a lack of prejudice, and it should take due care to execute arrest warrants forthwith in the future.  See Supp. R. E(4).

## VI.  Insufficient Process

Morales—Vélez also argues that the complaint should be dismissed pursuant Federal Rule of Civil Procedure 12(b)(4) and 12(b)(5) for insufficient process and insufficient service of process, respectively.  (Docket No. 23 at pp. 18—20.)

### A.  Notice By Publication

Supplemental Rule G(4)(a)(i) states that "[a] judgment of forfeiture may be entered only if the government has published notice of the action within a reasonable time after filing the complaint or at a time the court orders."  Supp. R. G(4)(a)(i). The Rule does not outline a consequence for not publishing notice within a reasonable time, besides being a necessary condition before judgment can enter. Id.

The government first published notice of the action on
March 2, 2021. (Docket No. 14—1.)  Counting from the date the
complaint was filed on June 3, 2020, 272 days had elapsed.  While
the government did request a stay upon filing the complaint, the
motion was neither granted nor denied.  (Docket No. 5.)  On
November 17, 2020, the United States asked the Court to set aside
the stay request as the criminal case had been resolved. (Docket
No. 9.)  Counting from November 17, 2020, when that request was
granted, would shorten the calculation of the lag time to 105 days.

Morales—Vélez argues that this does not constitute a
reasonable amount of time.  (Docket No. 23 at p. 18.)  The United
States responds that once the case could continue, "notice was
published." (Docket No. 27 at p. 6.)

Morales—Vélez does not point the Court to any case
defining a "reasonable time" period for publication, but argues a
similar provision of the Federal Rules of Civil Procedure, Rule
4(m), is a persuasive analogy.  (Docket No. 23 at p. 18.)  Rule
4(m) provides parties 90 days to complete service of process after
filing a complaint.  Fed. R. Civ. P. 4(m).  Considering the
flexibility added to Rule 4(m) by the 1993 amendments, 105 days
seems within the bounds of reasonableness.  See 2,164 Watches, 366
F.3d at 772 ("Amendments in 1993 accorded courts discretion 'to
enlarge the [time] period even if there is no good cause shown.'")

(internal citations omitted).  But even if 105 days were not reasonable, or for that matter 272 days, the Court must examine whether there was any intentional delay by the government or if Morales—Vélez was prejudiced. Cf. United States v. Ayer, 857 F.2d 881, 885 (1st Cir. 1988) (district judge did not abuse discretion in refusing to dismiss for tardy service under Rule 4 where "[t]here is nothing to suggest that the delay in service was intentional or that the government stood to benefit from it. On the opposite hand, there has been no meaningful demonstration of any cognizable prejudice resulting to defendants from the passage of additional time.").

Morales—Vélez has not alleged intentional delay by the government to gain a benefit nor has he stated that he has been prejudiced such that he cannot defend in the case as well as he might.  (Docket No. 23 at p. 22.) The Court thus finds that the publication was adequate pursuant to Rule G(4)(a)(i). See United States v. Real Prop. Located at 19905 73rd Ave. NE, 2007 WL 1725221, at *1 (W.D. Wash. June 12, 2007) (finding government's publication adequate pursuant to Rule G(4)(a)(i) despite not being made in reasonable time because the failure was not in bad faith and did not apparently prejudice opposing parties).

**B.   Notice to Claimants**

Supplemental Rule G(4) also requires the government to "send notice of the action and a copy of the complaint to any person who reasonably appears to be a potential claimant on the facts known to the government . . . ." Supp. R. G(4)(b)(i). The notice "must be sent by means reasonably calculated to reach the potential claimant." Id. at G(4)(b)(iii)(A).

Morales—Vélez argues that notice was not sent in a way reasonably calculated to reach him because it was sent to the wrong correctional facility, and was sent to his federal defender who was not at the time authorized to represent him in the civil proceeding. (Docket No. 23 at pp. 18—19.) The government states that it sent notice to his known place of incarceration and nevertheless met the requirement by sending notice through Morales—Vélez's attorney in the administrative proceeding, and advising of the existence of the forfeiture through its filing in the criminal docket. (Docket No. 5 at p. 5—6.)

If Morales—Vélez left the first correctional facility by July of 2020, (Docket No. 30 at p. 6), the government should not have sent notice to him there in March of 2021 and should have sent notice instead to the place he was currently imprisoned. See Whiting v. United States, 231 F.3d 70, 77 (1st Cir. 2000) ("[T]he government must show, if the issue is contested, that the notice

was mailed to the prison in which the claimant was in fact being held."). Rule G(4)(b)(v) states explicitly, however, that "[a] potential claimant who had actual notice of a forfeiture action may not oppose or seek relief from forfeiture because of the government's failure to send the required notice." Supp. R. G(4)(b)(v). Whether notice eventually reached Morales—Vélez at his place of incarceration is irrelevant here because Morales—Vélez had actual notice of the forfeiture case as early as July 23, 2020 when the United States referenced the civil forfeiture in its opposition to his 41(g) motion for return of property, and has since been litigating the forfeiture. See U.S. v. Sánchez, 2016 WL 424953, at *4 (D. Mass. Feb. 3, 2016) (claimant had obvious actual knowledge where she took steps to participate in the proceedings by posting a bond for the property); Criminal Docket No. 39. Because Morales—Vélez had actual notice, as evident by him litigating in the civil forfeiture case, the misdirected notice to him does not affect this proceeding. See Supp. R. G(4)(b)(v); U.S. v. Sánchez, 2016 WL 424953 at *4.

    **C.  Due Process**

        The fact of Morales—Vélez's actual notice also defeats any claim that the government violated his right to due process. González-González v. U.S., 257 F.3d 31, 36 (1st Cir. 2001) (explaining that "actual knowledge of ongoing forfeiture

proceedings from other sources" overcomes "inadequacies in the notice afforded by the government") (citing _Whiting_, 231 F.3d at 74).

## VII. Complaint untimely pursuant to §983(a)(3)

Pursuant to CAFRA, any person claiming the property seized in a nonjudicial forfeiture may file a claim with the agency after the seizure.  18 U.S.C. § 983(a)(2)(A).  Filing a claim forces the agency to stop the administrative forfeiture process and instead commence a judicial process.  _Id._ at § 983(a)(3)(A).  The person making a claim does not need to use any particular form to do so. _Id._ at § 983(a)(2)(D).  The claim must, however, satisfy three requirements: "(i) identify the specific property being claimed, (ii) state the claimant's interest in such property, and (iii) be made under oath, subject to penalty of perjury."  _Id._ at § 983(a)(2)(C).  If the person files a claim within the time allowed, the Government must file a complaint for forfeiture within 90 days or return the property.  _Id._ at § 983(a)(3)(A).  If the Government fails to do so and does not in the interim proceed with a criminal forfeiture, it is forbidden from pursuing a civil forfeiture.  _Id._ at §983(a)(3)(B).

Instead of pursuing a claim, a person with an interest in the property can also petition the agency for mitigation or remission. 28 C.F.R. § 9.3.  "A petition for remission or mitigation does not

serve to contest the forfeiture, but rather is a request for an executive pardon of the property based on the petitioner's innocence . . . ." Ibarra v. United States, 120 F.3d 472, 475 (4th Cir. 1997) (internal quotation marks and citation omitted). "A petition must include proof of an individual's interest in the property and state the facts and circumstances justifying remission or mitigation." Martin v. Leonhart, 717 F. Supp. 2d 92, 97 (D.D.C. 2010).

Morales—Vélez argues that he submitted a claim on January 7, 2020, which started the clock for the government to file a forfeiture complaint within 90 days, which it failed to do. (Docket No. 23 at pp. 20—21; Docket No. 30 at pp. 8—9). The United States argues that Morales—Vélez submitted a petition, not a claim, and thus no deadline existed for the filing of the forfeiture complaint. (Docket No. 27 at pp. 6—7).

A petition admits the validity of the seizure but seeks mitigation of its harshness, while a claim contests the propriety of the government's action and demands a district court adjudication. See Cohen-Sánchez v. United States, 2012 WL 1150760, at *3 (D.N.J. Apr. 5, 2012) (citing Schrob v. Catterson, 948 F.2d 1402, 1420 (3d Cir. 1991)). While Morales—Vélez's submission does implicitly contest the forfeiture, suggesting it is a claim, there is a preliminary and disqualifying

problem with the document.  Pursuant to CAFRA, a claim must "be
made under oath, subject to penalty of perjury."  18 U.S.C. §
983(a)(2)(C)(iii).  Morales—Vélez, however, never swore under
oath, subject to penalty of perjury, to the facts of the petition;
only his attorney did.  (Docket No. 15—2 at p. 4.)  Morales—Vélez's
attorney electronically signed both signature lines on the last
page of the document.  <u>Id.</u>

"Generally, an attorney's signature does not fulfill a
client's oath requirement because the oath must be made by a person
with personal knowledge of the facts alleged therein."  <u>In re</u>
<u>Seizure of $143,265.78 from Checking Account No. 1851349546 and</u>
<u>$28,687.40 from Checking Account No. 1080022185</u>, 384 Fed. Appx.
471, 475 (6th Cir. 2010) (citing <u>United States v. Currency</u>
<u>$267,961.07</u>, 916 F.2d 1104, 1108 (6th Cir. 1990) and <u>United States</u>
<u>v. One Men's Rolex Pearl Master Watch</u>, 357 Fed.Appx. 624, 628 (6th
Cir. 2009)).  The regulations issued pursuant to section
983(a)(2)(C) clarify that the claim shall "(3) Be made under oath
by the claimant, not counsel for the claimant . . ."  28 C.F.R.
§ 8.10(b)(3).  Morales—Vélez's attorney does not have personal
knowledge of his proprietary interest in the property and thus
cannot attest to it without additional attestation by Morales—
Vélez.  <u>Cf.</u> <u>Calash v. Drug Enf't Admin.</u>, 2009 WL 87596, at *3—4
(S.D. Fla. Jan. 12, 2009) (finding document to be a valid claim

where only attorney signed claim but attached notarized statement signed by claimant that qualified as an oath pursuant to state law).   The First Circuit Court of Appeals has explained that "forc[ing] claimants to assert their alleged ownership under oath" "create[s] a deterrent against filing false claims."   United States v. $23,000 in U.S. Currency, 356 F.3d 157, 163 (1st Cir. 2004) (analyzing an analogous provision in Supplemental Rule C that requires the claimant to file a 'verified' statement).

Because Morales—Vélez has not sworn that the claim's contents are truthful, the document fails to comply with the requirements of a valid claim.[8]  See United States v. Thirty-Four Thousand Nine Hundred Twenty-Nine and 00/100 Dollars ($34,929.00) in U.S. Currency, 2010 WL 481250, at *2 (S.D. Ohio Feb. 5, 2010) ("This Court agrees that a claim signed by counsel and not by the claimant is defective.").   Without filing a valid claim, the 90-day time limit on the government does not start to run.  See Manjarrez v. United States, 2002 WL 31870533, at *2—3 (N.D. Ill. Dec. 19, 2002) (because only claimant's attorney signed the claim, no valid claim had been filed within the requirements of § 983(a)(2)(C), and thus "the 90-day limitation period for the filing of a forfeiture

---

[8] If additional evidence were submitted that showed Morales—Velez swore under oath on some part of the petition, the Court would reconsider its decision.  See Marie v. Allied Home Mortgage Corp., 402 F.3d 1, 7 n. 2 (1st Cir. 2005).

complaint has apparently never begun to run."). While Morales—Vélez did file a valid claim with the Court sufficient to create statutory standing, the two claims are legally distinct and the proper filing of one does not serve to salvage a flaw in the other. Cf. United States. v. $23,000 in U.S. Currency, 356 F.3d 157, 166 (1st Cir. 2004) (explaining that while the two forms contain "essentially the same information," they serve distinct purposes and the properly filed administrative claim did not substitute for the absence of a judicial claim).

## VIII. Fifth Amendment Due Process Violation from Delay

Morales—Vélez also argues that the delay in bringing the forfeiture complaint and then in litigating it has violated his due process right pursuant to the Fifth Amendment of the United States Constitution. (Docket No. 23 at pp. 21—22.)

The government does not answer this argument. (Docket No. 27.)

Significant delays in bringing a forfeiture complaint can deprive a claimant of their property in violation of the Fifth Amendment Due Process clause. U.S. v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in U.S. Currency, 461 U.S. 555, 564 (1983). Courts apply the same test used to determine if a defendant's Sixth Amendment right to a speedy trial has been violated, developed in Barker v. Wingo, 407 U.S. 514 (1972). Id.

The test requires weighing the "length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Id.

The government took nine months to file the civil forfeiture complaint from the date of seizure. (Docket No. 23 at p. 22.) The criminal complaint filed immediately after the seizure did, however, contain a forfeiture allegation for property or proceeds related to the controlled substances offense. (Criminal Docket No. 14 at p. 3—4.) When the plea agreement in the criminal case was filed on March 5, 2020, the parties evidently agreed to remove the $20,000 from the forfeiture section evidenced by the words "including but not limited to $20,000.00" being crossed out and initialed by the parties. (Criminal Docket No. 33 at p. 6.) The civil forfeiture complaint was then filed on June 3, 2020. (Docket No. 1.) The Court gives this factor some weight but notes that nine months is only half as long as the amount of time the Supreme Court found to be a "quite significant" period of time in $8,850. 461 U.S. at 565 ("We regard the delay here—some 18 months—as quite significant.").

As far as the delay in litigating the case after the complaint was filed, $8,850 concerned whether "a delay in instituting forfeiture proceedings violates due process," and does not explain whether due process could be violated by initiating a case but

then prosecuting it slowly.  See $8,850, 461 U.S. at 561-62. The
First Circuit Court of Appeals clarified, however, that delays
after filing a complaint, where there is no prejudice to the
claimant, do not violate due process.  See United States v.
Zorrilla-Echevarría, 671 F.3d 1, 12 (1st Cir. 2011) (finding that
there was "no denial of due process" when "[t]he only delay
complained about here was not in the starting of the forfeiture
procedures, but to hearing Castillo-Peña's claim to the money" and
that the person was not prejudiced by the delay).

As the government has not asserted its reasons for why it
waited until June of 2020 to file the civil forfeiture complaint,
the Court is left to conjecture on this prong.  The Court does
recognize, however, the possibility that the plea agreement
negotiations may have led to an agreement to litigate the issue
separately from the criminal matter, based on the timing of the
filing and the phrase that was crossed out in the plea agreement.
See Criminal Docket No. 33 at p. 6.  The Court gives this factor
little weight, however, considering that this is the Court's own
guess, faced with the absence of explanation from the government.

Morales-Vélez has diligently asserted his right to the
property, filing an administrative claim with the DEA on January 7,
2020, see Docket No. 15-2, a motion for return of property in the
criminal docket on July 9, 2020, see Criminal Docket No. 37, a

renewed motion for a hearing on the return of the property at his sentencing hearing on March 16, 2021, see Criminal Docket No. 65, and a claim in this docket on April 29, 2021, see Docket No. 15. The Court does express some confusion on why Morales—Vélez did not pursue his rights within the civil case immediately after being alerted to it in July of 2020, but this may be related to the case acceptance policies of the Federal Defender's office.  The Court thus gives some weight to Morales—Vélez's advocacy for his property right.

Lastly, the Court analyzes whether Morales—Vélez has been prejudiced by the delay.  $8,850, 461 U.S. at 569 ("The primary inquiry here is whether the delay has hampered the claimant in presenting a defense on the merits, through, for example, the loss of witnesses or other important evidence. Such prejudice could be a weighty factor indicating that the delay was unreasonable."). Morales—Vélez does not allege that the United States' delay in bringing the civil complaint has caused him to lose evidence or make his claim harder to defend.  (Docket No. 23 at p. 22.)  He alleges instead the understandable fact that it prejudiced him personally to not have access to his money while waiting for the case to proceed.  Id.  While deprivation of property alone can be prejudice, cases so finding involved much longer stretches of time before the forfeiture proceedings were initiated.  See, e.g. United

States v. Sharp, 655 F. Supp. 1348, 1352 (W.D. Mo. 1987) (holding that "prejudice . . . can be presumed where [claimants are] deprived of the use of [their] property by the government without justifiable cause for a period of twenty-three months"); United States v. Paris López, 111 F. Supp. 2d 100, 103 (D.P.R. 2000) (Laffitte, J.) ("Here, claimants have been deprived of large sums of money for 20 months, and their deprivation will continue for the foreseeable future."). As such, the Court gives limited weight to this factor.

Considering that the time period between the seizure and filing of the civil complaint was nine months, a time period which overlapped with a criminal complaint that had its own forfeiture allegation, that Morales—Vélez does not allege that the delay in bringing the case made it harder for him to defend his claim, and that the delay was not as long as cases finding extreme prejudice from the time period alone, the Court does not find that the Barker factors point to a violation of Morales—Vélez's due process right. Cf. $8,850, 461 U.S. at 569—70.

## X.    Conclusion

For the reasons set forth above, Morales—Vélez's motion to dismiss is **DENIED**. (Docket No. 23.)

**IT IS SO ORDERED.**

San Juan, Puerto Rico, March 8, 2022.

<u>s/ Francisco A. Besosa</u>
FRANCISCO A. BESOSA
SENIOR UNITED STATES DISTRICT JUDGE